Filed 3/30/22  P. v. Valladares CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B306766 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No.  MA075965) |
| v. | |
| NORMAN VALLADARES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan Z. Yudkowsky, Judge.  Affirmed in part and reversed in part with direction.

Tracy L. Emblem and Julie Caleca, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

After Norman Valladares rear-ended another vehicle on Highway 14, he was convicted of felony driving under the influence of alcohol (Veh. Code, § 23152, subd. (a))[1] and misdemeanor possession of an open container while driving (§ 23222, subd. (a).)  Appellant admitted the allegation that he had refused a chemical test within the meaning of section 23612. The trial court sentenced appellant to three years in prison, but suspended 18 months of the sentence and ordered that portion to be served under mandatory supervision.[2]

Appellant appeals, contending the trial court erred in denying his *Batson-Wheeler*[3] motion without performing a comparative analysis of the dismissed female Hispanic juror with jurors who remained on the panel.  He also contends the trial court erred in denying his motion for mistrial after improper statistical evidence was offered by a California Highway Patrol (CHP) officer on improperly permitted re-direct examination. Appellant further contends the trial court erred in informing the

---

[1]     Undesignated statutory references are to the Vehicle Code.

[2]     The information alleged appellant had suffered a prior conviction for driving under the influence in 2013, within the meaning of section 23550.5, subdivision (a), and further alleged this conviction was a prior conviction within the meaning of Penal Code section 667.5, subdivision (b).  The abstract of judgment indicates the trial court relied on the section 23550.5 enhancement in sentencing appellant.  The prior conviction allegations were not tried by the jury or the court.  As discussed below, the trial court mistakenly believed appellant had admitted the prior conviction.

[3]     *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

jury it had taken judicial notice of appellant's admission, made outside the presence of the jury, of the allegation that he had refused a chemical test, and further erred in denying his motion to re-open closing argument to address this issue with the jury. Appellant asks that we independently review the in camera record of the *Pitchess*[4] hearing, and we have done so.  Finally, appellant contends, and respondent agrees, that appellant never admitted the prior conviction for driving under the influence.  We agree as well.  We vacate the sentence in this matter and remand it for a court trial on the prior conviction allegations,[5] as appellant previously waived his right to a jury trial on the allegations.  We affirm the judgment of conviction in all other respects.

## BACKGROUND

On January 3, 2019, about 10:40 p.m., Cherisa Edwards was driving her Nissan Murano on Highway 14 when she noticed traffic merging due to construction on the road ahead.  As she slowed down and tried to merge with other traffic, she was hit from behind by appellant's black SUV.  Appellant later explained that he applied his brakes but they locked up and he was unable to stop soon enough to avoid the collision.  The collision generated enough force to deploy the airbags in appellant's vehicle, which caused abrasions on his arms.

---

[4]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[5]     The driving under the influence conviction was also alleged to be a prior conviction within the meaning of Penal Code section 667.5, subdivision (b).

3

Edwards called 911 to report the accident. CHP Officers Veliz and Chapman, who had been working in the construction area, arrived at the scene in about five minutes. Both Edwards's and appellant's vehicles were in the middle lane and were blocking traffic. When the officers approached appellant's vehicle, Officer Veliz noticed a large quantity of beer cans inside the rear storage area. Officer Chapman determined the vehicle was inoperable and told appellant to walk to an area on the median.

CHP Officer Mark Recalde and his partner arrived at the scene before appellant's vehicle was moved. After their patrol car was parked, Officer Veliz told Officer Recalde that he had observed beer cans in appellant's SUV. Officer Recalde joined appellant, who was in the center median, and spoke with him about the accident. He initially spoke with appellant in a mixture of Spanish and English, and his recording device was not activated at that time.

Appellant told Officer Recalde he was driving home from his job in Burbank. Officer Recalde described appellant as nervous and standoffish, with poor balance, mumbled speech, and red and watery eyes. At the preliminary hearing, the officer testified he first smelled alcohol when appellant was inside his vehicle looking for his registration and insurance. At trial, the officer testified he smelled an odor of alcohol on appellant from several feet away.

Officer Recalde began to question appellant about the amount of alcohol he had consumed. At this point, the officer's recording device was on. According to Officer Recalde, appellant said he had not had any alcohol that day, but had had eight beers the day before. He last ate about three hours before the collision,

4

when he had a sandwich.  Appellant explained the beer cans in his vehicle were to be recycled.  There were some discrepancies between Officer Recalde's account of the discussion and the transcript:  Officer Recalde testified appellant said he never drank beer and was not taking any prescription medication, but these statements do not appear in the transcript of the officer's recording.

Officer Recalde asked appellant to perform a series of field sobriety tests.  The tests were conducted about 150 feet from the officer's patrol car and were not recorded by the car's video camera, although there was an audio recording of the tests.  Officer Recalde described the tests in his trial testimony.

Officer Recalde first administered the horizontal gaze nystagmus (HGN) test, which involved an observation of appellant's eye movements for nystagmus under three different conditions.  Recalde testified that he observed six out of six possible "clues" from the test.  Officer Recalde testified appellant's performance was consistent with being impaired by alcohol.

Officer Recalde also asked appellant to perform a one-leg stand test.  This test involved appellant standing with heels and toes together with his arms at his side, raising one leg six inches off the ground and holding it while Officer Recalde counted until the officer told him to stop.  Appellant tried to perform the test twice.  Both times, he swayed and put his foot down after two seconds.  Officer Recalde testified appellant's performance was consistent with being impaired by alcohol.

Officer Recalde additionally asked appellant to perform a walk and turn test, which involved walking heel to toe on an imaginary line.  Appellant attempted to get into the starting

5

position for this test but could not.  He lost his balance "numerous" times.  When Officer Recalde asked appellant if he was okay, appellant replied that he was nervous.  Officer Recalde then offered appellant the option of another test, which involved counting by using his fingers.  The officer testified appellant appeared to have difficulty understanding the instructions for the test, but was able to perform the test well after two or three tries.  Officer Recalde testified appellant's performance was consistent with being impaired by alcohol.

Officer Recalde offered appellant the opportunity to take a preliminary alcohol screening test and told him he could refuse the test.[6]  Appellant refused.  "Due to the [appellant] being involved in a traffic collision, [the officer's] observations of being under the influence of alcohol, his odor, his inability to balance on his feet, and his poor performance on the field sobriety tests," Officer Recalde concluded appellant was under the influence of alcohol and arrested him.  After placing appellant in a patrol car, the officer informed appellant that the law required him to submit to a chemical test due to his arrest, but appellant could refuse the test.  Appellant refused and asked for a lawyer.

After defense counsel cross-examined Officer Recalde, the trial court permitted the prosecutor to question Officer Recalde on re-direct examination about the statistical reliability of the field sobriety tests.

Appellant did not call any witnesses.

---

[6]     Officer Recalde testified that a preliminary alcohol screening test using a breathalyzer in the field was considered a field sobriety test and was not a chemical test under California law.

DISCUSSION

A.   *The Trial Court Did Not Err in Denying the Batson-Wheeler Motion.*

After the prosecutor used consecutive peremptory challenges to dismiss two male Hispanic jurors and one female Hispanic juror, defense counsel made a *Batson-Wheeler* motion. The trial court found appellant had made a prima facie case of racial discrimination, but ultimately denied the motion. Appellant contends the trial court erred because it denied the motion without engaging in comparative analysis, and such analysis would show that the prosecutor's reasons for dismissing prospective Juror No. 3, the female Hispanic juror, were pretextual. We do not agree.

"Both the federal and state Constitutions prohibit any advocate's use of peremptory challenges to exclude prospective jurors based on race. [Citations.] Doing so violates both the equal protection clause of the United States Constitution and the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution." (*People v. Lenix* (2008) 44 Cal.4th 602, 612.)

" 'There is a rebuttable presumption that a peremptory challenge is being exercised properly, and the burden is on the opposing party to demonstrate impermissible discrimination.' [Citation.] 'A three-step procedure applies at trial when a defendant alleges discriminatory use of peremptory challenges. First, the defendant must make a prima facie showing that the prosecution exercised a challenge based on impermissible criteria. Second, if the trial court finds a prima facie case, then the prosecution must offer nondiscriminatory reasons for the challenge. Third, the trial court must determine whether the

prosecution's offered justification is credible and whether, in light of all relevant circumstances, the defendant has shown purposeful race discrimination.  [Citation.]  "The ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the [defendant]." ' " (*People v. Parker* (2017) 2 Cal.5th 1184, 1211.)

Appellant contends that when a prima facie case is found and the prosecutor states his or her reasons for dismissing the juror, "courts are required to apply a comparative analysis."  This is a slight overstatement.  " '[E]vidence of comparative juror analysis *must* be considered in the trial court . . . if relied upon by the defendant[.]' " (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1174.)  If a defendant relies on evidence of comparative jury analysis on appeal, even for the first time, we must consider it if " 'the record is adequate to permit the urged comparisons.' " (*Ibid*.)  Since appellant did rely on comparative analysis evidence in the trial court and continues to do so on appeal, we consider this claim.

In the trial court, the prosecutor explained she dismissed prospective Juror No. 3 because "basically she has no life experience.  She's younger.  She's never served on a jury.  No kids.  Lives with her parents.  She's in college.  So that's why I excused her."  Appellant responded that the prosecutor's reason was pretextual because the prosecutor had not asked the juror's age and Juror No. 3 was "not even the only college student on the jury, that [prospective] Juror No. 7 is also [a]graduate student."  Counsel stated he was "trying to engage in some comparative juror analysis."

The trial court ruled: "[T]he issue for the court is whether the reasons are genuine or pretextual; and from what I'm hearing from [the prosecutor], I believe that her justifications are genuine."

We do not view the trial court's failure to specifically address this analysis as necessarily indicating the court failed to consider the analysis. The trial court may simply have found it unpersuasive. Regardless, we consider the evidence and do not find it probative of pretext.

We note initially that youth and limited life experience are legitimate race neutral reasons for excusing a juror. (See *People v. Lomax* (2010) 49 Cal.4th 530, 575; *People v. Taylor* (2010) 48 Cal.4th 574, 616; *People v. Neuman* (2009) 176 Cal.App.4th 571, 582 ["young students, inexperienced at life"]; *People v. Perez* (1994) 29 Cal.App.4th 1313, 1328 [college students with "limited life experience"].)

Appellant contends that Juror No. 7, like Juror No. 3, was a college student with no children and no jury experience and so had limited life experience but was not excused by the prosecution. Appellant also contends for the first time on appeal that the prosecutor's failure to excuse Jurors Nos. 8923, 3649, 3484 and 3867, who all lacked jury experience, indicates pretext. (See *Miller-El v. Dretke* (2005) 545 U.S. 231, 248 [when a proffered reason also applies to "other panel members, most of them white, none of them struck, [it] is evidence of pretext.].)

" 'As our high court has explained, for a comparative analysis to be probative, a seated juror must have a " 'substantially similar *combination* of responses,' in all material respects" to an excused juror. [Citation.] "Although jurors need not be completely identical for a comparison to be probative

[citation], 'they must be materially similar in the respects significant to the prosecutor's stated basis for the challenge.' " ' " (*People v. Henderson* (2020) 46 Cal.App.5th 533, 559.)

Juror No. 7 did not share a substantially similar combination of responses with Juror No. 3. Juror No.7 was a graduate student working on his Ph.D. while Juror No. 3 was a college student. Juror No.7, being significantly farther along in his studies, had more life experience than Juror No. 3, and it is reasonable to infer that he was also older than her. Juror No. 7 referred to his father-in-law in one response, showing that he was or had been married, unlike Juror No. 3, again giving him more life experience. Juror No. 3 expressly stated that she lived with her parents, while Juror No. 7 did not. Most significantly, however, Juror No. 7 raised his hand in response to defense counsel's question if there was anyone who could not be fair, stating that he was unsure if he could be fair in this case because "alcoholism has plagued a lot of members in my family. One of my uncles passed away in 2015, and my father-in-law passed away in September 2018 from liver and kidney failures. So it's a bit of an emotional response." This response indicates that Juror No. 7 was likely to be a favorable juror for the prosecution. In fact, after the *Batson-Wheeler* motion was denied, defense counsel dismissed Juror No. 7.[7]

---

[7] There is some ambiguity about whether Juror 3704, originally seated in seat number 7, remained in that seat. At one point, the transcript indicates the court stated: "Juror No. 7, you are now Juror No. 9." The trial court did not otherwise have a habit of moving jurors around within the first 12 seats. The previous movement directive was "Juror No. 16, you are now Juror No. 3." Both parties continued to refer to the male student as Juror No. 7 during the subsequent *Batson-Wheeler* motion.

There is nothing in the record on appeal to indicate the race of the other four prospective jurors identified by appellant. Even assuming for the sake of argument that these jurors were White, they had nothing in common with Juror No. 3 apart from a lack of jury experience. They were all employed (or retired from employment) and married; three of the four had adult or older teen-age children, suggesting they were considerably older than Juror No. 3. In short, they all had a great deal more life experience than Juror No. 3. Thus, the prosecutor's failure to excuse them is not evidence of pretext.

B. *The Trial Court Did Not Err in Denying the Motion for Mistrial.*

Appellant contends the trial court erred in denying his motion for a mistrial based on Officer Recalde's redirect testimony concerning three of the field sobriety tests. He contends the testimony exceeded the scope of cross-examination; Recalde had not been designated as an expert in the area of scientific studies; his testimony lacked foundation and methodology, constituted improper statistical evidence of guilt, and usurped the jury's ability to evaluate Officer Recalde's credibility. Appellant further contends the evidence denied him a reasonable opportunity to prepare a defense, including his right to present an expert witness, and violated his right to a fair trial. Appellant contends the error was of constitutional dimensions and not harmless under the *Chapman* standard of review. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

---

Thus, it seems likely that it was Juror No. 7 who became Juror No. 9. In any event, defense counsel also excused Juror No. 9.

11

The People contend appellant has forfeited many of these contentions by failing to raise them in the trial court. We agree. Appellant's contentions in the motion for a mistrial were quite narrow: 1) the testimony exceeded the scope of redirect; 2) Officer Recalde had no basis to opine that the tests predicted a specific blood alcohol level (BAC); and 3) lack of discovery hampered his ability to respond to the BAC evidence. Any other claims are forfeited. (See *People v. Harris* (2013) 57 Cal.4th 804, 849 [failure to raise a specific issue in a motion for mistrial forfeits the issue on appeal].)

We agree Officer Recalde's testimony about the tests showing a likelihood of a specific BAC was potentially misleading, but find the error harmless even under *Chapman*, as Officer Recalde unequivocally clarified on recross-examination that he could not determine a subject's BAC from the tests. Since the prejudice appellant identified from lack of discovery was an inability to defend against claims of a specific BAC, any discovery failure was necessarily harmless.

### 1. Officer Recalde's Testimony

On redirect examination, Officer Recalde explained that three of the field sobriety tests which he administered were "scientifically validated." For each test, there were a certain number of possible "clues" in the subject's movements which indicated impairment, but not all clues need to be present to show impairment. The prosecutor questioned Officer Recalde about the HGN test, during which Officer Recalde had observed six of six clues, asking: "[W]hat does your background, training and experience tell you as far as the likelihood of impairment in that case?" Defense counsel objected that it was outside the scope of cross-examination, the trial court sustained the

12

objection, and the prosecutor asked to approach for what turned into an unreported bench discussion.  Following the discussion, the prosecutor reframed the question to ask:  "[W]hat's the significance of that as far as someone's level of impairment?"  Officer Recalde testified that the significance was that only four of the six clues need to be observed to get "a likelihood" of impairment, and he got all six.  He then non-responsively continued:  "When . . . the scientifically-validated tests were done, four out of six clues were found and the likelihood of someone being impaired was 88 percent."  Defense counsel did not object or ask that the numbers be stricken.

The prosecutor next turned to the walk and turn test, which appellant did not complete, asking:  "[I]s there any significance that you did observe two clues and that he did not – was not able to complete that test?" Officer Recalde replied: "That's correct."  The prosecutor then asked:  "Is there any, like, percentage or likelihood that you have that you based on your background, training and experience would know from that?" Defense counsel objected and asked to approach.  Another unreported bench conference followed.  Following the discussion, the prosecutor asked:  "So please tell me the significance of . . . what you observed in the walk and turn and what happened with the defendant?"  Officer Recalde explained that appellant's inability to perform the test constituted two clues, and that with this combination of factors, "it's a 79 percent chance or likelihood" of impairment.  Defense counsel objected and the trial court began:  "Let me caution the witness to –."  The prosecutor then interrupted and asked to approach and be on the record.  The parties approached, but the discussion was not reported.

The prosecutor then turned to the third test, the one-leg stand, asking what was the significance of the officer's observation of two of four possible clues, based on his background, training and experience. Officer Recalde replied: "[I]f I have two out of four clues, that gives me the likelihood that the individual is impaired 83 percent at a .08 percent." Defense counsel asked to approach, but the trial court told him to state his objection. Counsel replied: "First of all, beyond the scope of cross." The court responded: "Overruled."

Officer Recalde then continued: "[I]f I'm able to see four clues in H.G.N., two clues in one-leg stand[,] and two clues in walk and turn, that gives me an 83 percent chance, based on the studies that were done by NITSA, National Highway Traffic Safety Administration, that the individual is a .08 percent B.A.C."

Soon thereafter, the court took a break and defense counsel moved for a mistrial.

### 2.   Appellant's Oral Motion

Defense counsel argued: "[I]'ve been given no discovery prior to this trial commencing about any of these conclusions that the officer is drawing essentially saying that based on the presence of certain clues and some unnamed studies that he's referring to that he's claiming that with a certain percentage, you know, reliability he can then extrapolate the actual blood alcohol content of the person based on the clues. [¶] I'm not aware of any actual scientific basis for any of that; and certainly there was nothing in any of the discovery or prior testimony that would have alerted me in any way to the possibility that any such testimony would be forthcoming. It certainly didn't come out at all in the direct examination[.]"

14

Counsel explained that if he had known about the testimony ahead of time, he would have moved to exclude it pursuant to Evidence Code section 352. Counsel continued, "I don't think this is a bell that can be unrung. The jury has now heard all of this testimony that supposedly you can tell someone's B.A.C. just from how many clues they show on certain tests, which I'm not aware of any studies that support that. Just under a *Kelly-Frye*[8] analysis I don't think there's any support in the scientific community to support the proposition." Counsel added: "I don't think this can be a fair trial any longer at this point on just basic due process issues, 14th Amendment, without any prior notice of this."

The prosecutor argued that defense counsel opened the door on cross-examination, the questions were "hypothetical" and "based on the officer's training and experience what he knows. He never gave an opinion and never suggested what the defendant's B.A.C. was." The prosecutor contended Recalde was an expert.

Defense counsel responded that the questions were not hypotheticals and expert opinions are subject to discovery. He also stated: "I know that there are reliability percentages that have been attached to certain of these tests in terms of how reliable they were, but that's a different issue than to say that you can actually tell someone's B.A.C. with a particular percentage accuracy based on these tests."

The trial court ruled: "From the court's perspective, you did open the door. You challenged the witness's recollection, his methodology and I believe that counsel has an opportunity to

---

8      *People v. Kelly* (1976) 17 Cal.3d 24; *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013.

15

rehabilitate her witness, and you have an opportunity to recross, and I trust that, during recross, you'll deal with all these issues."

### 3. Cross-Examination and Recross

"A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged, and we use the deferential abuse of discretion standard to review a trial court ruling denying a mistrial." (*People v. Bolden* (2002) 29 Cal.4th 515, 555.)

" 'The extent of the redirect examination of a witness is largely within the discretion of the trial court. . . . It is well settled that when a witness is questioned on cross-examination as to matters relevant to the subject of the direct examination but not elicited on that examination, he may be examined on redirect as to such new matter.' " (*People v. Steele* (2002) 27 Cal.4th 1230, 1247–1248.) "Redirect examination's 'principal purposes are to explain or rebut adverse testimony or inferences developed on cross-examination, and to rehabilitate a witness whose credibility has been impeached.' (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 256, p. 328.)" (*People v. Cleveland* (2004) 32 Cal.4th 704, 746.)

The trial court did not abuse its discretion in finding that appellant opened the door, at least in part, to Officer Recalde's testimony about statistical evidence concerning the three tests. Defense counsel's cross-examination questions did suggest that the HGN test was not reliable because the "clues" in that test could be caused by hundreds of physical conditions. Counsel had Officer Recalde demonstrate the one leg test, during which Officer Recalde "wobbled" and put his foot down. Counsel then elicited testimony that Officer Recalde only listed one possible "clue" from this test in his report, and that appellant was shaking

16

and said he was nervous. All of this testimony suggested appellant's performance on the test was not a reliable indicator of impairment. Counsel also suggested the walk test was not a reliable indicator of impairment because appellant "couldn't really do [it]." Officer Recalde's redirect testimony can reasonably be understood as responding to that implication. The essence of his testimony was that studies showed the tests were highly reliable indicators of impairment even when all possible clues for the test were not observed.[9]

Simply because defense counsel opened the door to further testimony on the reliability of the test when only some clues are observed, however, does not mean that any testimony was permissible. In two instances, Officer Recalde testified the tests gave a percentage likelihood that the subject had a blood alcohol content of .08. While the officer may well have intended the use of the .08 number simply to indicate impairment, we agree with appellant it did have the potential to suggest to the jury, incorrectly, that the tests provided specific BAC numbers. (See *People v. Joehnk* (1995) 35 Cal.App.4th 1488, 1492, 1496 [two prosecution experts agreed blood alcohol levels cannot accurately be estimated based on HGN test].)

We see no reasonable possibility that this potential was realized, however. On recross examination, defense counsel addressed the blood alcohol numbers, asking: "Now, I want to

---

[9] As quoted above, on redirect examination, Officer Recalde used the term percentage likelihood of impairment. On recross examination, he agreed with defense counsel that the percentages he had mentioned showed the reliability of the studies, that is, that officers were correct a certain percentage of the times they concluded a subject was impaired.

make sure I understand what you were saying correctly, because it almost sounds like you were starting to say just from doing these tests you can determine exactly what someone's blood alcohol content was." Officer Recalde replied: "That's not what I said." Defense counsel continued: "I just want to make sure it's clear to the jury that you're not saying that with these field sobriety tests you can say, oh, this guy is a .06, that guy is a .07, that guy is a .09. [¶] All you can tell is whether there is some basis to believe that they might be impaired?" Officer Recalde replied: "Correct. I cannot determine someone's exact blood alcohol content. I cannot do that."

C.   *The Trial Court Did Not Err in Taking Judicial Notice of Appellant's Admission That He Refused to Test or in Refusing to Reopen Argument.*

Appellant contends the trial court erred in taking judicial notice of his admission of the truth of the section 23612 allegation that he refused a chemical test, and telling the jury it could consider this judicially noticed fact. The admission was made outside the presence of the jury. The prosecutor requested judicial notice of the admission because she wanted to argue appellant's refusal showed consciousness of guilt. Appellant contends the evidence was not relevant because his admission during trial did not establish his state of mind at the time he refused the test. Appellant also contends the trial court abused its discretion in denying his motion to reopen closing argument after the jury asked a question about the admission.

Respondent contends appellant has forfeited the relevancy claim by failing to raise it in the trial court. We agree. We see no error in the trial court's denial of appellant's request to reopen.

18

1.   <u>Relevancy</u>

Appellant contends defense counsel raised the issue when he stated: "We already discussed that whole issue. This just isn't any matter that's before them." He contends that by stating the refusal was not an issue before the jury, his "stated grounds for the objection was that the evidence was not relevant." This is a very broad objection, and clearly referred to the jury not needing to decide whether the refusal allegation was true or false. As defense counsel went on to explain: "They're not being asked to decide whether he refused or not, so—" The court replied that it had eliminated the instruction that told the jury to decide whether appellant refused. The court added: "But there is a jury instruction in here that talks about the refusal without asking the jury to . . . determine whether that fact is true or not." This was an apparent reference to the consciousness of guilt instruction. Defense counsel replied: "Correct. So they're not being asked to decide the truth of whether he violated the refusal enhancement as such. [The prosecutor] can certainly argue that he refused and refer to the—"

Defense counsel's objection that the admission was not relevant because the jury did not have to decide the truth of the allegation was in no way sufficient to alert the court or the prosecutor that counsel was contending that an admission during trial was not probative of appellant's state of mind at the time he refused the test. Accordingly, this claim is forfeited.

19

2.    Reopening

Appellant contends the jury's question during deliberations about the admission showed that the court's statement to the jury about his admission confused the jury, and the court abused its discretion in refusing appellant's request to reopen closing argument to address the legal significance of the admission.

The jury's note requested: "Verification of what happened in court on Feb. 28th, 2020 with Mr. Valladaresviera & the court."  The court replied: "The defendant admitted to willfully refusing a peace officer's request to submit to the chemical test pursuant to the Vehicle Code. [¶] The Court refers you to jury instruction No. 2130 for further instructions."

Jury Instruction No. 2130 told the jury: "The law requires that any driver who has been arrested submit to a chemical test at the request of a peace officer who has reasonable cause to believe the person arrested was driving under the influence. [¶] If the defendant refused to submit to such a test after a peace officer asked him to do so and explained the test's nature to the defendant, then the defendant's conduct may show that he was aware of his guilt.  You are to accept as fact that the defendant refused to submit to such a test.  It is up to you to decide the meaning and importance of the refusal.  However, evidence that the defendant refused to submit to a chemical test cannot prove guilt by itself."

Appellant contends, correctly, that the trial court had a duty, when faced with a question from the jury, to " 'consider how it can best aid the jury.' "  (*People v. Young* (2007) 156 Cal.App.4th 1165, 1171–1172.)  He is also correct that among the tools available to the court was reopening closing argument.

20

(*Id*. at pp. 1170–1172.)  This does not mean that the failure to reopen argument was an abuse of discretion.

Appellant contends argument should have been reopened to allow him to respond to the prosecutor's statement during rebuttal closing argument that "the court had instructed the jury to accept appellant's admission 'in the middle of trial' as an admission of guilt and that the admission supported guilty verdicts on both counts."  Appellant has not provided a record citation to support this contention.  Rebuttal was brief, and the prosecutor's only argument was "All this argument about him not understanding in the middle of this trial, he admitted to the refusal allegation.  If there was any issues, he would not have done that.  So you can't now argue, hey, I didn't understand or I thought I needed a lawyer.  He already admitted to you that is why the court says you have to accept this as a fact that he refused.  [¶]  So just keep those two things in mind, the forest and the refusal, and find the defendant guilty of both counts."  The prosecutor used the term "forest" to refer to the "bigger picture" and the totality of the circumstances of the investigation.  Defense counsel did not object to the refusal argument.

To the extent that the jury's question indicated it was focusing on the prosecutor's rebuttal argument, the court's answer was fully adequate to address such concerns.[10]  The court

---

[10]    It is more likely that the jury was simply confused by the manner in which they learned of the admission, as its reference to the date indicates.  On March 5, 2020, at the close of the People's case, the prosecutor stated:  "At this point I would just ask for the court to take judicial notice that on February 28th of 2020, the defendant admitted to willfully refusing a peace officer's request to submit to and/or willfully failed to complete the chemical test pursuant to Vehicle Code section 23612."  The

21

clarified that appellant had in fact admitted the allegation, and reminded the jury of the significance of that admission. The trial court did not abuse its discretion in refusing to permit defense counsel to argue that a prosecutorial statement to which he had failed to object was wrong.

D.     *Appellant Did Not Admit He Suffered a Prior Conviction.*

Appellant was charged with violating section 23152, subdivision (a), driving under the influence within 10 years of a prior felony driving under the influence conviction. Before trial, appellant waived a jury trial on the allegation he had suffered a driving under the influence conviction in 2013. This conviction was also alleged as a prior conviction within the meaning of Penal Code section 667.5. After the jury reached its verdicts, the court asked about sentencing. The prosecutor told the court that they needed to address the priors, and the court replied: "I believe he admitted the priors." The prosecutor stated that it was her understanding  appellant had only waived his right to a jury trial. The court asked defense counsel if the court's understanding was incorrect, and counsel replied it was his recollection that appellant admitted the priors. The court then stated: "It was two steps. He waived [the] right to a jury trial, and he admitted the priors."

The record on appeal does not contain an admission of the 2013 conviction by appellant, and both parties now agree he did not admit the prior conviction. Respondent notes defense counsel agreed with the trial court's statement that appellant had

court replied:  "And that request for judicial notice has been granted." The court's response appropriately clarified that appellant had in fact admitted that he refused the test.

admitted the 2013 conviction, but acknowledges that statement cannot satisfy the requirement that a defendant personally admit the prior conviction.  (Pen. Code, §§ 1025.)

We agree with respondent that there is no bar to remanding the case for a court trial on the prior conviction.  (See *People v. Monge* (1997) 16 Cal.4th 826, 845.)

E.      *The Trial Court Did Not Abuse Its Discretion in Ruling on the Pitchess Motion.*

The trial court granted appellant's *Pitchess* motion for discovery of any complaints in Officer Recalde's personnel records relating to dishonesty.  The trial court held an in camera hearing and thereafter stated: "There is no discovery forthcoming."  Appellant requests that we review the sealed transcript of the in camera hearing to determine whether the trial court abused its discretion in concluding there was no relevant discoverable information.  As requested and required, we have done so.  (*People v. Prince* (2007) 40 Cal.4th 1179, 1284–1286; *People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1232.)  We see no abuse of discretion by the trial court.

## DISPOSITION

The sentence is vacated and the matter is remanded for a trial on the prior conviction allegations and a new sentencing hearing. The judgment of conviction is affirmed in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:



GRIMES, Acting P. J.



WILEY, J.